IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK M. COBB,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13cv1750 |
| | ) | **Electronic Filing** |
| **MINH-TRI V. TRUONG**, in his | ) | |
| individual and official capacities, | ) | |
| **JOHN and/or JANE DOE**, in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Frank M. Cobb ("plaintiff") commenced this civil rights action against Federal Bureau of Investigation ("FBI") law enforcement officer Minh-Tri V. Truong ("Truong" or "defendant") and unidentified law enforcement officers John and/or Jane Doe ("Doe defendants") (collectively "defendants") seeking redress for assertedly being prosecuted based solely on his association with individuals indicted for federal drug trafficking. Plaintiff's complaint purports to advance federal claims for wrongful arrest, unlawful search and seizure, and malicious prosecution in violation of the Fourth Amendment; wrongful prosecution in violation of his First Amendment right to freedom of association; and a state law claim for intentional infliction of emotional distress. Presently before the court is Truong's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted. All claims in plaintiff's complaint will be dismissed with prejudice except plaintiff's malicious prosecution claim in violation of the Fourth Amendment, which will be dismissed without prejudice. As to that claim plaintiff will be granted leave to amend.

## I.    STANDARD OF REVIEW

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery.  Id. at 544.  In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id.  Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct.  Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura

Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) and Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

Further, although the focus in assessing a motion to dismiss is on the allegations set forth in the pleadings, "matters of public record, orders [and] exhibits attached to the complaint" also

may be considered.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d

Cir. 1994) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357); Pension

Benefit Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (In

ruling on a motion to dismiss, a district court can consider the complaint, attached exhibits, and

matters of public record.).  Matters of public record include judicial proceedings and a court may

take judicial notice of another court's opinions and orders.  Southern Cross Overseas Agencies v.

Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  Finally, in applying the

plausibility standard a reviewing court must make a context-specific inquiry, drawing on its

judicial experience and common sense.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir.

2009).

     The record as read in the light most favorable to plaintiff establishes the background set

forth below.  Truong led a multi-jurisdictional task force responsible for investigating, arresting

and prosecuting members of a drug operation in the Western District of Pennsylvania.

Unidentified defendants John and/or Jane Doe assisted Truong with the investigation.  As the

lead investigator, Truong had principal authority to decide who to target, investigate and/or

arrest.

     Plaintiff became a target of the investigation due to his relationships with Dewayne

Joseph ("Joseph"), Melvin Walker ("Walker"), and Orlando Cobbs ("Cobbs"), each of whom

defendant suspected to be part of a drug operation.  Plaintiff and Joseph have been close friends

since childhood.  Cobbs and Walker are plaintiff's cousins.  Plaintiff has a close familial

relationship with Cobbs and Walker in part because they grew up in the same community.

     On December 9, 2010, plaintiff, Joseph, Walker, Cobbs and thirty-eight other individuals

were indicted by a federal grand jury for alleged violations of federal drug laws.  Plaintiff was

charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine and two hundred eighty grams or more of crack cocaine. Plaintiff also was charged with maintaining a drug-involved premises and possessing firearms in furtherance of drug-trafficking crimes. A warrant for plaintiff's arrest was issued.

In the early morning hours of December 14, 2010, Truong and members of a local Pennsylvania State Police Weapons and Tactics team searched plaintiff's residence. Plaintiff refused to consent to the search and was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Plaintiff was handcuffed during the search. No cocaine, crack cocaine, or evidence of distribution of cocaine or crack cocaine was discovered. There are no signed forms evidencing plaintiff's consent to the search or a waiver of his Miranda rights. Truong incorporated into his FBI report that plaintiff was read his Miranda rights and agreed to waive them and had consented to the search, but did not sign any forms evidencing the same because he was handcuffed.

Plaintiff was transported to the McKeesport Police Department for further questioning. Truong interrogated plaintiff and during the process falsely asserted that plaintiff had large quantities of cocaine and money obtained from drug-trafficking, despite the absence of evidence connecting plaintiff to such activity.

The United States moved to detain plaintiff pending trial and a detention hearing was held on December 17, 2010. Plaintiff was ordered detained and was transported to Northeast Ohio Correctional Center in Youngstown, Ohio. Plaintiff remained in pretrial detention until December 10, 2011.

Plaintiff was indicted along with seventeen co-defendants for conspiring to distribute 5 or more kilograms of cocaine and 280 grams or more of crack cocaine in violation of 21 U.S.C. §

846.  See United States v. Gaines et al., 2:10cr233 (W.D. Pa., J. Ambrose).  Plaintiff, Joseph, Cobbs and Walker were named in the original indictment.  Id. at Doc. No. 1.  Twenty-five additional defendants were charged in related indictments.  Plaintiff was the only individual out of the forty-two charged who went to trial.  The charges against one defendant were dropped.  The remaining forty defendants accepted plea deals.  Plaintiff's case was tried before a jury from December 6 through December 9, 2011.

At trial, Joseph testified that plaintiff was not involved in the conspiracy and his residence was not used for drug distribution.  Joseph's statements were consistent with his October 17, 2011 affidavit, but were not consistent with "the terms of his plea agreement," which "implicated" plaintiff in the conspiracy.  Joseph acknowledged that his testimony conflicted with the content of his plea agreement, but further testified that the statements incriminating plaintiff were devised by law enforcement and did not reflect his own words.  Plaintiff avers on information and belief that the false content of the agreement implicating plaintiff was prepared by Truong or someone acting pursuant to his specific direction.[1]

On December 10, 2011, a jury acquitted plaintiff of all charges and he was released from custody.  Plaintiff filed the instant action on December 7, 2013 against Truong and John and/or Jane Doe, in their individual and official capacities, alleging civil rights violations arising out of (1) the search of plaintiff's home, (2) his arrest and detention, and (3) the prosecution that ensued.

---

[1] Plaintiff's rendition indicating the inconsistent information was contained within the contents of Joseph's plea agreement is at odds with the standard practices of the United States Attorney's Office.  Nevertheless, given the specific detail of these allegations, it must be assumed that there was a prior statement attributable in some manner to Joseph that implicated plaintiff in the operation of the conspiracy.  It likewise must be assumed that Joseph disavowed the accuracy of the statement when questioned about it and attributed the inaccuracy to the law enforcement officer or assistant United States attorney who had drafted the document or made the statement.

Against this background, plaintiff contends that Truong targeted him due to his association with Joseph, Walker and Cobbs. Truong assertedly arrested plaintiff without probable cause and searched his home without consent. Truong and/or the Doe defendants also provided false testimony to the grand jury in order to secure the indictment against him.[2]

In addition to providing false testimony to the grand jury, Truong and/or the Doe defendants purportedly concealed exculpatory evidence from the grand jury. Plaintiff maintained a surveillance system that recorded all activity at his residence. Truong refused to review the footage. Plaintiff repeatedly told Truong to review the tapes because it would show the lack of drug transactions occurring at plaintiff's residence. At an unknown date and time after the December 14, 2010 search, defendants allegedly erased the memory of plaintiff's security system, thereby destroying the exculpatory evidence.

Defendant moves to dismiss plaintiff's complaint on a number of grounds. First, Truong asserts that there is no cognizable claim for violation of the First Amendment right to freedom of association under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). Second, the statute of limitations bars plaintiff's claims under the First and Fourth Amendments to the extent they are predicated on plaintiff's allegedly unlawful arrest and search of his residence. Third, plaintiff cannot establish the absence of probable cause necessary to maintain a malicious prosecution claim under the Fourth Amendment because the grand jury indictment provided *prima facie* evidence of probable cause to prosecute. And there purportedly are insufficient facts alleged to show that Truong improperly pressured or influenced prosecutors to bring the case.

Truong further contends that any claims for failure to present exculpatory evidence to the

---

[2] Truong provided an affidavit dated March 14, 2014, attesting that he testified at plaintiff's trial, but he did not testify before the grand jury that indicted plaintiff.

grand jury properly are analyzed under the Due Process Clause of the Fifth Amendment, not the Fourth Amendment. And any due process claim would still fail because the potentially exculpatory evidence remained in plaintiff's possession, thereby precluding a finding of bad faith.

Truong also asserts that plaintiff's First and Fourth Amendment claims are barred by absolute and/or qualified immunity. From Truong's perspective, plaintiff's claims necessarily are predicated on Truong's testimony and absolute immunity applies to a testifying witness and any work performed in preparation of that testimony. Plaintiff's First Amendment claim is barred by qualified immunity because he cannot establish that Truong violated a clearly established right.

Finally, Truong contends that all § 1983 claims against him should be dismissed because he was not acting under color of state law. Plaintiff's intentional infliction of emotional distress claim fails because a cause of action against an officer in his individual capacity under Bivens is limited to constitutional violations and does not extend to tort claims. And the government invites the court to dismiss the unidentified defendants *sua sponte* because the grounds for dismissal raised by Truong would apply equally to any other unidentified federal agents and plaintiff's inability to effectuate personal service allegedly bars pursuit of such claims at this juncture.

Plaintiff claims he has pled sufficient facts to draw a reasonable inference that defendants are liable for the misconduct alleged. In other words, defendants purportedly targeted him due to his association with suspected drug-traffickers, initiated his prosecution without probable cause and destroyed exculpatory evidence.

Plaintiff concedes that (1) his intentional infliction of emotional distress claim should be dismissed for the reasons stated by defendant and (2) the statute of limitations has run on the

claims predicated solely on his arrest and the search of his residence, including unlawful arrest and false imprisonment.[3]  He nevertheless maintains that the evidence related to these events is pertinent to his remaining claims.

Plaintiff asserts his First Amendment claim is viable under Bivens.  He reasons that because his freedom of association claim derives from defendants' alleged Fourth Amendment violations, it too is governed by the same statute of limitations.  And Truong's invocation of qualified immunity does not defeat his First Amendment claim because the right of freedom of association was clearly established.

From plaintiff's perspective, Truong's assertion of immunity based on testimony misstates plaintiff's malicious prosecution claim.  Truong supposedly initiated the prosecution against plaintiff by providing false information to be presented to the grand jury.  Defendants also

---

[3] "Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued."  Larsen v. State Employees' Ret. Sys., 553 F. Supp.2d 403, 415 (M.D. Pa. 2008) (quoting O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006)).  Pennsylvania law provides a two-year statute of limitations.  42 Pa. C. S. § 5524.  The accrual date of a §1983 claim is governed by federal common-law tort principles. Larsen, 553 F. Supp.2d at 416.  Under this approach "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  Therefore, the "cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based."  Id. (quoting Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)).  For claims of unlawful arrest, the "statute begins to run at the time the claimant becomes detained pursuant to legal process."  Wallace, 549 U.S. at 397; Dique v. New Jersey State Police, 603 F.3d 181, 188 (3d Cir. 2010).  With respect to claims of unlawful search and seizure, "courts will generally find that the plaintiff knew of the injury, and thus the cause of action accrued, on the day the search and/or seizure took place."  Cora v. Hanover Borough Police Dep't, No. 1:11-CV-1067, 2011 WL 6176738, at *4 (M.D. Pa. Dec. 12, 2011) (citing Becker v. Godboldte, 2011 U.S. Dist. LEXIS 55167, *12, 2011 WL 2015213 (M.D. Pa. May 24, 2011) (citing Raffensberger v. Moyer, 2010 U.S. Dist. LEXIS 29938, *8–9, 2010 WL 1257628 (E.D. Pa. Mar. 29, 2010)); MacNamara v. Hess, 67 F. App'x 139, 143 (3d Cir. 2003) (Search and seizure claims under the Fourth Amendment accrued on the day of the search because plaintiffs were present when the search occurred and thus had knowledge of any injury that occurred from it.).

concealed and destroyed exculpatory evidence. Plaintiff challenges defendants' assertion that testimonial immunity extends to this type of conduct.

Plaintiff further maintains that his malicious prosecution claim does not require a showing that Truong pressured the prosecutor to bring the case. Instead, defendant's initiation of the prosecution without probable cause and withholding and destroying exculpatory evidence suffices to state a claim and displace any *prima facie* showing of probable cause created by the grand jury's return of an indictment.

Finally, plaintiff posits that the Doe defendants should not be dismissed because their identities will be confirmed through reasonable discovery.

Plaintiff's attempt to draw on 42 U.S.C. § 1983 to pursue claims for violations of his First and Fourth Amendment rights is misplaced. While the nature of § 1983 and the precedent thereunder is informative to the matter at hand, <u>Bivens</u> provides the only avenue for recovery where the defendant acted pursuant to federal authority and law.

In general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right.[4] <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>Kelly v. Borough of Sayreville</u>, 107 F.3d 1073, 1077 (3d Cir. 1997); <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must

---

[4] Section 1983 creates liability against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 47 F.3d at 633).

Bivens is the "federal analog" to a § 1983 action.  Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (citing Iqbal, 556 U.S. at 675-76) (quoting Hartman v. Moore, 547 U.S. 250, 254, n. 2 (2006)).  In Bivens, the United States Supreme Court recognized an "implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  Correctional Serves Corp. v. Malesko, 534 U.S. 61, 66 (2001).  A plaintiff states a Bivens claim when he provides a plausible showing that his constitutional rights were violated by a federal officer acting under color of federal law.  Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001); Correctional Services Corp., 534 U.S. at 66.  "The factors necessary to establish a Bivens violation will vary with the constitutional provision at issue."  Bistrian, 696 F.3d at 366 (citing Iqbal, 556 U.S. at 676).

Here, plaintiff alleges that defendant, a FBI law enforcement officer, violated his First and Fourth Amendment rights.  Such allegations foreclose any § 1983 claim predicated on state action.  Brown, 250 F.3d at 800.  ("It is well established that liability under § 1983 will not attach for actions taken under color of federal law.") (citing Bethea v. Reid, 445 F.2d 1163, 1164 (3d Cir. 1971)).  Consequently, any § 1983 claims against defendant must be dismissed.

Defendant's general contention that plaintiff has failed to set forth sufficient factual allegations to make a plausible showing of relief on his malicious prosecution claim under the Fourth Amendment is well taken.  To set forth a claim within the scope of Bivens, a plaintiff must identify a constitutionally protected right that was violated by the defendant.  Merkle, 211 F.3d at 792; Albright v. Oliver, 510 U.S. 266, 273 (1994).  Plaintiff invokes the Fourth Amendment, which protects "[t]he right of the people to be secure . . . their persons . . . but upon

probable cause." U.S. Const. amend. IV. He further avers that he was prosecuted (1) without probable cause and (2) solely because he associated with individuals who were believed to be drug dealers. He was incarcerated for over a year. Such a claim is within the scope of Bivens. See Gallo v. City of Pittsburgh, 161 F.3d 217, 225 (3d Cir. 1998) (A malicious prosecution claim under § 1983 or Bivens raises the specter of an abuse of the judicial process by government agents and properly can be grounded in the Fourth Amendment where a sufficient deprivation of liberty has occurred.).

A claim for malicious prosecution in violation of the Fourth Amendment has the following elements: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). Each element is to be examined separately and care must be taken not to conflate the distinct showing and separate interests that are served by these separate requirements. Kossler v. Crisanti, 564 F.3d 181, 194 (3d Cir. 2009) (en banc).

Plaintiff must plead sufficient facts to create a plausible showing that the elements of the claim are present and permit a reasonable expectation that discovery will generate evidence to support each element. See Kossler, 564 F.3d at 186-87 (presenting a Fourth Amendment malicious prosecution claim to a jury requires sufficient evidence to support each of the five elements); Gieman v. State Farm Mutual Auto Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The preferred approach is to consider each element in sequential order; if the claim fails at any step, consideration of the remaining elements is unnecessary. Kossler, 564 F.3d at 186-87.

The complaint does allege sufficient facts to support the first and second elements. Specifically, an adequate factual context has been advanced to support the requirement that Truong initiated the prosecution. Truong is alleged to have led a multi-jurisdictional task force responsible for an investigation that led to defendant's arrest and prosecution. It is further alleged that Truong had principal authority to decide who to target, investigate and/or arrest. And he was the individual who presented the results of the investigation in order to have criminal charges returned against those who were investigated and arrested. John and Jane Doe assisted Truong in these undertakings. Thus, a showing that defendants initiated a criminal proceeding against plaintiff has been set forth.

Truong's assertion that plaintiff's malicious prosecution claim fails because the United States Attorney for the Western District of Pennsylvania initiated the proceedings against plaintiff is unavailing. "It is not necessary that [a] defendant initiate the proceedings himself. Liability for malicious prosecution can attach when [a] defendant influences a third party to initiate the proceedings." Bristow v. Clevenger, 80 F. Supp.2d 421, 432 (M.D. Pa. 2000) (citing Gilbert v. Feld, 788 F. Supp. 854, 861 (E.D. Pa. 1992)). A law enforcement officer may be liable for malicious prosecution where he "influenced or participated in the decision to institute criminal proceedings." Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014) (citing Sykes v. Anderson, 625 F.3d 294, 308–09, 317 (6th Cir. 2010)); accord Henderson v. City of

Philadelphia, 853 F. Supp.2d 514, 518 (E.D. Pa. 2012) ("Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may . . . be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.") (citing Brockington v. City of Philadelphia, 354 F. Supp.2d 563, 569 (E.D. Pa. 2005)). "It is settled law that 'officers who conceal and misrepresent material facts to the [prosecutor and grand jury] are not insulated from a [Bivens] claim for malicious prosecution simply because the prosecutor [and] grand jury . . . act independently to facilitate erroneous convictions." Halsey, 750 F.3d at 297 (citing Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004), Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) and Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988)).

Plaintiff alleges that Truong effectively initiated the proceedings against him. Truong, as the lead investigator, assertedly was the source of the underlying information presented to the grand jury. It is averred that he had discretion in deciding what information and how the information from the investigation was presented to the prosecutor in order to pursue charges. Although far from a model of clarity, the complaint essentially asserts that Truong manipulated the information supporting the quest to obtain an indictment by (1) improperly embellishing the facts surrounding plaintiff's involvement with others who were part of the 41 member drug distribution network, (2) withholding or refusing to examine exculpatory evidence that would have shed light on that involvement and (3) embellishing the statements of individuals who provided information to law enforcement regarding the operation. Given the relevant case law and the factual matter pled in plaintiff's complaint, defendant can be said to have initiated the criminal proceedings.

Facts to support the second element likewise have been set forth.  In order to satisfy the favorable termination element, a plaintiff must show that his prior criminal case was disposed of in a way that indicates he was innocent.  <u>Kossler</u>, 564 F.3d at 187-88 (holding that a § 1983 malicious prosecution plaintiff must be innocent of the alleged misconduct giving rise to the crimes charged in the underlying prosecution) (citing <u>Donahue v Gavin</u>, 280 F.3d 371, 383 (3d Cir. 2002) and <u>Gilles v. Davis</u>, 427 F.3d 197, 211 (3d Cir. 2005)); <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir. 2000)).  Plaintiff has alleged and the public records of this court show that he was acquitted of all of the underlying drug and gun charges.  Such an outcome satisfies the favorable outcome requirement.  <u>Id.</u>  (a showing of innocence can be demonstrated by:  "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court.") (citing <u>Donahue</u>, 280 F.3d at 383 and <u>Haefner v. Burkey</u>, 626 A.2d 519, 521 (Pa. 1993)).

Defendants' assertion that plaintiff's claim fails because he cannot "establish" probable cause seeks to erect an inappropriate burden on plaintiff at the pleading stage.  Nevertheless, plaintiff has failed to advance sufficient factual allegations to make a plausible showing that the presumption of probable cause created by the grand jury's return of the indictment as augmented by the public record from the underlying prosecution, which contains a multi-leveled review of plaintiff's pretrial detention on the charges therein, sufficiently has been drawn into question or otherwise rebutted.

"To state a plausible claim for . . . malicious prosecution under the Fourth Amendment, a plaintiff must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause." <u>Spiker v. Whittaker</u>, 553 F. App'x 275, 278 (3d Cir. 2014).  "Probable

cause exists whenever reasonably trustworthy information or circumstances within a [law enforcement] officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person [in question]." Id. (citing United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)).[5] "A [law enforcement] officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." Id. at 278 (citing Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Notwithstanding defendant's artful spin, plaintiff is not required to "establish" the absence of probable cause at this stage of the litigation. His burden is to allege enough factual matter that, when taken as true, raises a reasonable inference that Truong acted without probable cause and these actions were the but-for causation of the charges being returned against plaintiff. At this juncture plaintiff's allegations do not sufficiently make such a showing.

As a starting point, it has long been settled that in a § 1983 action the issue of whether a law enforcement officer had probable cause to pursue a prosecution is a question of fact which generally must be resolved by a jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir.1998) ("We have held that the question of probable cause in a section 1983 damage suit is one for the jury.") (citing Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978)). And resolution of a malicious prosecution claim on this element is appropriate only where it is clear as a matter of law that a jury cannot find "a lack of probable cause" for the underlying proceeding. Id. (citing Deary v. Three Un-Named Police Officers, 746 F.2d 185, 191 (3d Cir. 1984)).

---

[5] Stated in a different but related context, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Marasco, 318 F.3d at 514 (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)).

Plaintiff has advanced broad generalized assertions that defendant initiated the prosecution against him without probable cause. This generalization is grounded in and supported by the following alleged "factual matters." The instant lawsuit follows plaintiff's acquittal on all charges in an indictment returned against 17 co-defendants. Plaintiff was acquited of being a member of a drug conspiracy involving among others himself, Joseph, Cobbs, and Walker, of maintaining a drug-involved premises from which that conspiracy could operate, and possessing firearms in furtherance of that drug-trafficking. The prosecution against him was premised solely on his close association with his family relatives and close friend, all of whom were suspected of being drug-traffickers. Truong falsified his investigation report to reflect that plaintiff consented to a search of his residence and waived his <u>Miranda</u> rights. Five guns lawfully registered to plaintiff, 201 grams of marijuana and $1,100.00 in cash were seized from plaintiff's residence. Truong is alleged to have embellished or expanded the statements that were attributed to co-defendant Joseph when he decided to enter a guilty plea pursuant to a plea agreement. And Truong supposedly refused to retrieve, remove or view footage on plaintiff's home security system after plaintiff's arrest, which would have revealed certain activities outside plaintiff's residence. That footage from the security system eventually was lost or destroyed after plaintiff was detained.

Assuming these factual assertions to be true, which we must, they do not sufficiently create a factual scenario to rebut the presumption created by the grand jury's return of the original and superseding indictments against plaintiff and the multi-level judicial review of the government's evidence advanced to achieve plaintiff's pretrial detention under the Bail Reform Act of 1984. Defendant aptly notes that "[a] grand jury indictment constitutes prima facie evidence of probable cause to prosecute." <u>Woodyard v. County of Essex</u>, 514 F. App'x. 177, 183

(3d Cir. 2013) (quoting <u>Rose v Bartle</u>, 871 F.2d 331, 353 (3d Cir. 1989)).  The presumption arises from the regularity that attaches to a grand jury indictment or presentment.  <u>Rose</u>, 871 F.2d at 353.  This presumption may be rebutted "by evidence that the [indictment or] presentment was procured by fraud, perjury or other corrupt means.'"  <u>Id.</u>  A plaintiff's obligation to plead sufficiently the lack of probable cause (and ultimately prove the same) for the prosecution serves the important function of assuring that an adequate causal connection can be drawn between the investigatory action taken in violation of the constitutional right and the prosecutor's decision to proceed with the charges.  <u>Cf.</u> <u>Hartman</u>, 547 U.S. at 263 ("Some sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity.  And at the trial stage, some evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff.  The connection, to be alleged and shown, is the absence of probable cause.").

Of course, tendering only broad and generalized labels and conclusions or naked assertions that are devoid of further factual development will not supply the factual matter needed to proceed with rebutting the presumption of regularity from the grand jury's return of the indictment.  <u>Iqbal</u>, 556 U.S. at 678.  But beyond this, the record in <u>United States v. Gaines et al.</u>, 2:10cr233, reveals that plaintiff's allegations are generalized conclusions that fail to account for and raise a sufficient basis to displace the effect of the evidence the government proffered to procure plaintiff's pretrial detention.

In the underlying prosecution the government moved to have plaintiff detained prior to trial.  Plaintiff challenged the motion and a hearing was held.  <u>See</u> Hearing on Detention in <u>United States v. Gaines et al.</u>, 2:10cr233 (Doc. No. 143).  At the hearing the government

proffered background about the general nature, scope, participants and size of the alleged conspiracy. Id. at 6-9. As to plaintiff, it proffered that he "provided a safe haven for Dewayne Joseph, Orlando Cobbs, and other associates to sell cocaine from his home." Id. at 9. Based on intercepted telephone communications it was believed that on April 25, 2010, Joseph received approximately 2 kilograms of cocaine and was waiting at plaintiff's residence for a female to "bring [to Joseph] the shit." Joseph made several calls to his associates and customers and arranged various transactions. Plaintiff's home was placed under surveillance and vehicles of individuals known to be cocaine traffickers were observed at plaintiff's residence. Joseph entered carrying a white grocery bag that appeared to be full. Joseph exited the residence with another individual and left in that person's vehicle. Other associates came out of plaintiff's residence, placed a bag into the trunk of a car and left. Plaintiff began to walk up and down the street and conduct what the trained agents believed to be counter-surveillance. Multiple communications among Joseph, Walker and Cobbs occurred a short-time later in an effort to advise Joseph that the police were watching plaintiff's residence. Joseph indicated that he was already aware of the surveillance being conducted at plaintiff's residence. Id. at 9-12. Plaintiff contacted an officer with the Duquesne Police Department the next day and wanted to know why the police were watching his house the night before. Id. at 11.

Intercepted telephone calls also implicated plaintiff in assisting Joseph by holding a handgun that was exchanged for cocaine and later returned. A courier for Joseph took receipt of the handgun in exchange for cocaine. Joseph directed that the firearm be stored at plaintiff's place. A few days later Joseph received a call from "Easley," who requested to purchase the gun back from Joseph. Joseph called the courier from the transaction and directed him to go pick the gun up at plaintiff's place and take it back to the purchaser. Joseph called plaintiff and told him

that the courier was coming over and asked plaintiff to give the courier the "thing" that had been brought over to plaintiff's place the other day.  Id. at 12.  Other intercepted calls indicated that plaintiff was holding other firearms for Joseph and that Joseph would call and send a courier to retrieve them when they were needed, such as when Joseph was shot at on May 21, 2010, and he contacted plaintiff in order to obtain a weapon for retaliation.  Id. at 14.

On May 31, 2010, Joseph arranged to sell two ounces of cocaine at the local high school football field.  Joseph indicated he was going to plaintiff's in thirty minutes.  Later an unknown courier met the individual who was to purchase the two ounces.  After the transaction the courier proceeded back to plaintiff's place.  Id. at 15.  The purchaser then called Joseph and complained about the price that had been charged.  Id.

Plaintiff's residence also was visited by others in the indictment such as Cobbs.  Id. at 25. Individuals would come and go from plaintiff's residence while they were there.  Investigation officers such as Ryan Miller had reason to believe that there was drug trafficking occurring at the residence on each of these occasions.  Id. at 25-26.

Magistrate Judge Robert C. Mitchell presided over the hearing and after listening to the proffered evidence and cross-examination of the government's agent ordered plaintiff detained pending trial.  He reasoned and determined:

> from what's been presented here as to both [plaintiff and Walker] I find there's probable cause to believe they participated in the crimes charged in the indictment.  Based on the return of the indictment by the Grand Jury and the evidence presented here, there appears to me to be a strong likelihood of conviction . . . .

Id. at 48.  The order of detention was affirmed by Judge Donetta W. Ambrose and the United States Court of Appeals for the Third Circuit.  See Orders of January 25, 2011, and April 11, 2011, in United States v. Gaines et al., 2:10cr233 (Doc. No.s 199 & 838).

It is against the above backdrop that plaintiff's attempt to allege facts to rebut the

presumption of probable cause created by the grand jury's return of the indictment must be assessed. It is clear that the government had at its disposal numerous intercepted communications involving Joseph and other members of the drug-trafficking network. It also had numerous hours of actual surveillance of plaintiff's residence by law enforcement officers other than Truong.[6]

At this juncture plaintiff has not advanced specific factual allegations that make a plausible showing that the indictment was procured by fraud, perjury or other corrupt means. To the contrary, plaintiff's assertions appear to be nothing more generalized railings against the government. And when placed in context, it is clear that they are at best conclusory. In other words, plaintiff has not alleged anything more than conduct that merely is consistent with misconduct and has failed to identify any action by Truong that plausibly shows that through the use of corrupt means Truong actually influenced the prosecutor's decision to pursue or the grand jury's decision to return the charges against plaintiff.

First, plaintiff's acquittal on all charges does little if anything to undermine the presumption of probable cause. All interpretations of the probable cause standard are cabined to a belief of guilt that is reasonable as opposed to certain. Halsey, 750 F.3d at 299; accord Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) ("While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain.") (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). The evidentiary standard for probable cause is significantly lower than the showing needed for conviction. Halsey, 750 F.3d at 299 (quoting Wright, 409 F.3d at 602). Consequently, a subsequent acquittal is "irrelevant" to the existence of probable cause. Id.

---

[6] This evidence need not be treated as being true; it is sufficient simply to note that the government possessed and proffered such evidence in order to detain plaintiff pending trial.

Second, the proposition that the prosecution against plaintiff was premised solely on his close association with his family relatives and close friend, all of whom were suspected of (and later pled guilty to) being drug-traffickers, merely is consistent with the evidence proffered by the government at plaintiff's pretrial detention hearing and trial. It does not supply any factual basis to infer that Truong or anyone else engaged in fraud, perjury or other forms of corruption in seeking an indictment for drug conspiracy, maintaining a drug premises or possessing firearms in furtherance of a drug-trafficking crime.

Third, the asserted fact that Truong falsified his investigation report to reflect that plaintiff consented to a search of his residence and waived his <u>Miranda</u> rights is at best marginally relevant. Plaintiff did not challenge the search of his residence in the underlying prosecution. In other words, he did not assert in that forum that the search was undertaken without consent or was otherwise unlawful. Plaintiff has not identified any statement made by him during the search that Truong subsequently used to indict and prosecute plaintiff. The search of plaintiff's residence netted five guns lawfully registered to plaintiff, 201 grams of marijuana and $1,100.00 in cash. Even assuming that the assertion that plaintiff consented to the search and waived his <u>Miranda</u> rights was fabricated, the impact these reported factual details had, if any, on the underlying proceeding is not identified. And it is difficult to understand how this erroneously recorded information could have undermined the intercepted communications and surveillance the government used to make a showing of probable cause in order to detain plaintiff.

Fourth, Truong's alleged embellishment or expansion of the statements of co-defendant Joseph do not appear to have been in existence at the time when they could have influenced the prosecutor or the grand jury's decisions. The statements were given in conjunction with Joseph

deciding to enter a guilty plea pursuant to a plea agreement. Such conduct occurred well into the prosecution when Assistant United States Attorney Amy Johnston would have been in charge of creating such documents or statements and long after the decisions to arrest, charge and prosecute plaintiff occurred. There is no basis to assume that Truong engaged in conduct that removed or sufficiently colored Assistant Johnson's independent review of the evidence, which is an impediment that plaintiff must be able to overcome. Compare Hartman, 547 U.S. 263 ("Evidence of an inspector's animus does not necessarily show that the inspector induced the action of a prosecutor who would not have pressed charges otherwise. Moreover, to the factual difficulty of divining the influence of an investigator or other law enforcement officer upon the prosecutor's mind, there is an added legal obstacle in the longstanding presumption of regularity accorded to prosecutorial decisionmaking. . . . And this presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal[.]") (citations omitted). In other words, this conduct does not appear to raise an inference that Truong engaged in fraud, perjury or other corrupt conduct in marshalling the evidence that was presented to the prosecutor and the grand jury.

Fifth, the fact that Truong supposedly refused to retrieve, remove or view footage on plaintiff's home security system after plaintiff's arrest does nothing to diminish the surveillance of plaintiff's residence and intercepted communications upon which the government's case for detention was founded. That footage from the security system assertedly would have revealed certain activities outside plaintiff's residence. It eventually was lost or destroyed after plaintiff was detained. But its destruction appears to be a result over which plaintiff had equal if not total control. After drawing all reasonable inferences in plaintiff's favor, it still cannot be assumed

that plaintiff was unable to have his lawyer, a family member or a friend go to his house and preserve such footage. There is no basis to assume the Truong or any other law enforcement officer deprived plaintiff of preserving and making use of such evidence. In fact, plaintiff was able to procure and preserve the recorder itself, which his counsel marked as an exhibit at trial and used during closing argument. See Defendant's Trial Exhibit D in United States v. Gaines et al., 2:10cr233 (Doc. No. 582 at 3).

The only reasonable inference that can be drawn about the referenced security system recordings is that plaintiff had equal access to them at all relevant times. It is difficult to understand how Truong can be said to have engaged in fraud, perjury or other corruption by failing to review or preserve material things that were under the control of plaintiff. And again there is no basis to infer that Truong's failure to review the system recordings would have had any impact on the intercepted communications and personal surveillance of plaintiff's residence, which of course were underlying the judicial orders of detention and are matters of record that had a bearing on the existence of probable cause.

Plaintiff has failed to advance sufficient factual matter to make a plausible showing that the presumption of probable cause created by the grand jury's return of an indictment as augmented by the proceedings in the underlying record involving plaintiff's pretrial detention under the Bail Reform Act is the product of fraud, perjury or other corrupt influence or did not otherwise exist. As the United States Court of Appeals for the Third Circuit has emphasized:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Fowler, 578 F.3d at 210 (citations omitted). A context-specific inquiry that is based on judicial

experience and common sense makes clear that plaintiff's allegations are little more than thread-bare conclusions that - with regard to probable cause - are merely consistent with misconduct but fall short of making the required showing of plausible entitlement to relief. On this basis plaintiff's Fourth Amendment claim for malicious prosecution does not give rise to a reasonable inference that Truong is liable for the misconduct alleged and defendant's motion must be granted.[7]

Plaintiff's efforts to invoke the First Amendment are misplaced for three basic reasons. First, the scope of protection afforded under the Freedom of Association Clause does not prohibit the prosecution of plaintiff under the attendant circumstances. Second, the inability to advance factual matter that plausibly displaces the presumption of probable cause equally undermines a First Amendment claim. Third, the matters of which plaintiff complains are governed by the text of Fourth Amendment and proceeding with a First Amendment claim is contrary to the Supreme

---

[7] The failure of plaintiff to plead sufficient factual matter to rebut the presumption of probable cause created by the grand jury's return of the indictment as augmented collaterally eliminates his ability to make a plausible showing of improper motive by Truong or any other government agent. The fourth element of a malicious prosecution claim requires a showing that defendant "acted maliciously or for a purpose other than bringing [the plaintiff] to justice." DiBella, 407 F.3d at 601 (citing Marasco, 318 F.3d at 521). Malice encompasses "both ill will in the sense of spite and the use of prosecution for an extraneous, improper purpose." Russoli v. Salisbury Twp., 126 F. Supp.2d 821, 871 (E.D. Pa. 2000) (citing Bristow, 80 F. Supp.2d at 435. There is no such allegation or reason to infer that Truong or any other law enforcement official acted with such ill will or for a purpose other than pursuing what they believed to be a legal and proper prosecution.

 There is authority to the effect that "malice may be inferred from the absence of probable cause." Henderson v. Bailey, No. 1:09-CV-36-SJM, 2011 WL 1230159, at *7 (W.D. Pa. Mar. 31, 2011) (McLaughlin, J.) (citing Rusch v. Versailles Borough, No. CIV.A. 05-0138, 2006 WL 2659275, at *6 (W.D. Pa. Sept. 15, 2006) (citing Russoli, 126 F. Supp.2d at 871). But plaintiff's failure to make a plausible showing that the presumption of probable cause can be rebutted forecloses his ability to create the specter of improper motive through this means. In other words, plaintiff has failed to set forth sufficient factual matter to make a plausible showing that Truong or any other government actor pursued the prosecution for a purpose other than plaintiff's association with individuals engaged in drug trafficking.

Court's teachings in Albright and County of Sacramento v. Lewis, 523 U.S. 833 (1998).

Defendant's initial argument that Bivens should not encompass plaintiff's First Amendment claim is unavailing. The argument that it is an inappropriate expansion of Bivens to encompass the First Amendment claim plaintiff seeks to advance misapprehends the scope of Bivens and misconstrues the cases wherein the Court has declined to extend the Bivens framework to "any new context or new category of defendants."

Simply stated, "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Hartman, 547 U.S. at 254 n. 2 (quoting Carlson v. Green, 446 U.S. 14, 18 (1980)). Its holding in effect has supplied "the federal analog to suits brought against state officials under . . . § 1983." Id. (citing Wilson v. Layne, 526 U.S. 603, 609 (1999) and Waxman & Morrison, What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause, 112 Yale L.J. 2195, 2208 (2003) ("Section 1983 applies . . . to state and local officers, [and] the Supreme Court in Bivens . . . inferred a parallel damages action against federal officers")).

As defendant aptly notes, in the decades since Bivens the Supreme Court repeatedly has declined to extend its holding where the core principles and reasons underlying the creation of the remedy would not be or only partly would be served. See generally Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001); accord Iqbal, 556 U.S. at 675 ("the Court has been reluctant to extend Bivens liability 'to any new context or new category of defendants") . The Court has declined to extend Bivens to encompass discriminatory employment practices involving federal employees in large part due to Congress establishing an administrative scheme providing for various forms of relief. See Bush v. Lucas, 462 U.S. 367, 378 (1983). It has

declined to create a <u>Bivens</u> remedy to prohibit racial discrimination against enlisted military personnel. <u>Correctional Services Corp.</u>, 534 U.S. at 68 (citing <u>Chappell v. Wallace</u>, 462 U.S. 296, 305 (1983)). And it has declined to do so even where the defendants were alleged to have been civilian personnel. <u>Id.</u> at 69 (citing <u>United States v. Stanley</u>, 483 U.S. 669, 681 (1987)). It has refused to extend <u>Bivens</u> to cover government "employees alleged to have violated due process in their handling of Social Security applications" even though there was no other avenue available for challenging the alleged constitutional deprivation. <u>Id.</u> (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421 (1988). The availability of "an avenue for some redress" in the form of back-due benefits counseled against such an extension. <u>Id.</u> In <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994), the Court declined to recognize potential liability against a federal agency otherwise amenable to suit due to the deleterious effect that would result from aggrieved parties being able to bypass qualified immunity, thereby undermining an important purpose for <u>Bivens</u> liability: to deter individual officers from committing constitutional violations. <u>Id.</u> at 69-70. And in <u>Correctional Services Corp.</u>, the Court refused to extend liability against a private corporation operating a halfway house under contract with the Bureau of Prisons because doing so likewise would not serve this core purpose of <u>Bivens</u>.

But defendant seeks to extend the Court's refusal to expand <u>Bivens</u> beyond its original boundaries in a manner that has the potential to eviscerate the every remedy that <u>Bivens</u> created. Each instance where the Court declined to extend <u>Bivens</u> involved (1) an area where Congress had established other remedial or legal schemes that provided for partial redress or counseled against judicial expansion (federal employment/the military) or (2) an expansive application that had the potential to undermine the core purpose for <u>Bivens</u>: to provide a remedy against constitutional violations committed by individual officers acting under color of federal law.

Defendant fails to cite any case where the Court has suggested that some constitutional provisions may be enforced under Bivens where it is otherwise applicable while others may not. In other words, the Court has never suggested that there is a hierarchy to the various constitutional rights and only some are of enough importance to be enforced through a Bivens action. And we fail to see any sound basis for erecting such barriers.

There is no apparent reason to believe that substantive evaluation of the various constitutional rights committed by a federal officer while acting in a realm and context where Bivens traditionally has provided a remedy is to guide the determination of whether a remedy is even available. Defendant is a federal agent who clearly is subject to the constraints established by Bivens with regard to his investigatory actions. A remedy for constitutional violations in that realm is within the very core of Bivens itself, *i.e.*, a federal agent alleged to have violated a citizen's constitutional rights in a setting that does not implicate other remedial schemes or involve an application that undermines the very purposes giving rise to Bivens.

In short, there is no basis for acknowledging on the one hand that the First Amendment right to free speech can be protected through Bivens pursuant to a claim for retaliatory prosecution, which the Court has done in Hartman, and then holding on the other that another firmly established First Amendment right such as freedom of the press or freedom of association is not deserving of equal treatment under indistinguishable circumstances. We decline defendant's invitation to embark on such an insidious course.

With that said, it does not follow that the circumstance of this case actually set forth a plausible showing of relief for violation of freedom of association under a Bivens theory of recovery. Plaintiff's First Amendment malicious prosecution claim is subject to dismissal for a number of reasons.

First, plaintiff misapprehends the scope of protection afforded under the Freedom of Association Clause. The Court has recognized that the First Amendment's guarantee of freedom of association does restrict "the ability of the [government] to impose liability on an individual solely because of his association with another." N. A. A. C. P. v. Claiborne Hardware Co., 458 U.S. 886, 918-19 (1982). Thus, a defendant cannot be convicted solely because of his or her associations with others or a group. United States v. McKee, 506 F.3d 225, 238-39 (3d Cir. 2007) ("First Amendment protections require that the government produce more than evidence of association to impose liability for conspiracy."); accord United States v. Fullmer, 584 F.3d 132, 160-61 (3d Cir. 2009) ("Defendants cannot be convicted solely because of their associations, because such a conviction would clearly run afoul of the First Amendment's guarantee of freedom of association.") (citing Claiborne Hardware, 458 U.S. at 918-19 and McKee, 506 F.3d at 238). Instead, "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." McKee, 506 F.3d at 239 (quoting Claiborne Hardware, 458 U.S. at 920). And the government's evidence of intent is to be judged "according to the strictest law" or the "strictissimi juris doctrine." Fullmer, 584 F.3d at 160 (quoting McKee, 506 F.3d 239).

Plaintiff cannot prove that Cobbs, Walker and Joseph did not combine and join together to pursue unlawful goals. Cobbs, Walker and Joseph each pled guilty to the conspiracy charged in violation of 21 U.S.C. § 846. See Entries of Guilty Plea in United States v. Gaines et al., 2:10cr233 at Doc. No.s 401, 499 & 502. The presence of unlawful goals and the inability as a matter of law to prove a lack of the same foreclose any attempt by plaintiff to seek solace from the scope of First Amendment protections against his criminal prosecution for associating with

these individuals.

Second, plaintiff's inability to advance factual matter that plausibly displaces the presumption of probable cause equally would bar a First Amendment claim. The United States Court of Appeals for the Third Circuit has made clear that at the very least a plaintiff pursuing redress for malicious prosecution in violation of the First Amendment must be able to satisfy the common law elements of a malicious prosecution claim. Merkle v. Upper Dublin School District, 211 F.3d 782, 792 (3d Cir. 2000). These are: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Id. (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir.1996)). In addition, the plaintiff must be able to satisfy the components of the claim that bring it within the scope of § 1983 (and by extension its federal analog). Id. at 792 (outlining the Third Circuit's development of a malicious prosecution claim in the aftermath of Albright). Assuming that prosecution based solely on association is sufficient to supply the constitutional prerequisite needed to draw the claim within the ambit of § 1983 and its federal analog, plaintiff would still have the burden of pleading and proving that the prosecution was initiated without probable cause and defendant acted maliciously or for a purpose other than bringing permissible charges against plaintiff. Plaintiff's inability to plead factual matter that creates sufficient plausibility to displace the presumption of probable cause thus would foreclose his grounding of the claim in the First Amendment just as it does with doing so under the Fourth Amendment.

Third, permitting a malicious prosecution claim predicated on the First Amendment under the attendant circumstances would run afoul of the Supreme Court's admonishment against utilizing generalized principles from one provision of the Constitution were another provision

directly addresses the matter at hand.  It is well settled that "[w]here a particular Amendment

provides an explicit textual source of constitutional protection against a particular sort of

government behavior, that Amendment, [and] not [] more generalized [notions from other

constitutional provisions]" are to guide the court's analysis of the particular claim advanced.

Albright, 510 U.S. at 266 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); accord Lewis,

523 U.S. at 842 (same).

The record does not contain any extenuating circumstances that would justify moving

beyond the textual source of the Fourth Amendment in protecting against the injuries of which

plaintiff complains.  "The Fourth Amendment forbids [the government] from detaining an

individual unless the [law enforcement] actor reasonably believes that the individual has

committed a crime -- that is, the Fourth Amendment forbids a detention without probable cause."

Halsey, 750 F.3d at 291 (citing Bailey v. United States,  -- U.S. --, 133 S. Ct. 1031, 1037 (2013)

("The standard of probable cause, with 'roots that are deep in our history,' . . . 'represent[s] the

accumulated wisdom of precedent and experience as to the minimum justification necessary to

make the kind of intrusion involved in an arrest 'reasonable' under the Fourth Amendment.'")

(citations omitted)).  And this protection extends to prosecutions initiated maliciously and

without probable cause.  DiBella, 407 F.3d at 601; Marasco, 318 F.3d at 521.   These protections

remain at least until the point of wrongful conviction.  Halsey, 750 F.3d at 291.    Plaintiff

asserts injury in the form of arrest, pre-trial detention and trial.  He was acquitted.  His injuries

are matters squarely within the scope and protection governed by the Fourth Amendment.

Moreover, the interest plaintiff seeks to protect is being free from prosecution based on

keeping bad company.  But it has long been recognized that criminal liability cannot attach from

being present at the scene of a crime or in the company of wrongdoers and such conduct in itself

will not suffice to meet the burden of proof required for criminal prosecution and conviction. See, e.g, United States v. Barber, 429 F.2d 1394, 1397 (3d Cir. 1970) ("Therefore, mere presence at the scene of a crime, even in the company of one or more principal wrongdoers, does not alone make one an aider or abetter.") (citing Hicks v. United States, 150 U.S. 442 (1893)); United States v. Garguilo, 310 F.2d 249 (2d Cir. 1962); Hendrix v. United States, 327 F.2d 971 (5th Cir. 1964). It equally is settled that criminal liability cannot attach from the mere association with individuals involved in a criminal venture. See United States v. Dixon, 658 F.2d 181, 189 (3d Cir. 1981) ("a defendant must do more than associate with individuals involved in the criminal venture" in order to be guilty of engaging in a criminal enterprise). To the contrary, it is hornbook law that a jury cannot find a defendant joined in a conspiracy or other criminal undertaking unless the defendant both associated himself with a criminal enterprise and agreed to work with others to achieve an unlawful objective sought to be accomplished by the other members. See United States v. Wexler, 838 F.2d 88, 90-91 (3d Cir. 1988) ("One of the requisite elements the government must show in a conspiracy case is that the alleged conspirators shared a 'unity of purpose', the intent to achieve a common goal, and an agreement to work together toward the goal."), abrogated on other grounds, United States v. Caraballo-Rodriguez, 726 F.3d 418, 432 (3d Cir. 2013) (en banc); United States v. McGlory, 968 F.2d 309, 321 (3d Cir. 1992) (same). In short, "[t]he inferences rising from 'keeping bad company' are not enough to convict a defendant for conspiracy." Wexler, 838 F.2d at 91 (citing United States v. Cooper, 567 F.2d 252, 255 (3d Cir. 1977)).

It likewise is clear that the proper constitutional degree of protection against criminal liability for associating with others who are engaging in criminal conduct has been achieved without grounding such protection in the First Amendment. In other words, the protection of

right to be free from criminal liability based solely on keeping bad company in the context of a drug conspiracy has long been preserved without resort to civil rights liability predicated on a violation of the First Amendment.  Plaintiff complains of being arrested, indicted and held in pretrial detention without probable cause pursuant to a charge of being a member in a drug conspiracy.  Such matters textually are addressed by the Fourth Amendment.  Applying generalized principles from one amendment to an area that is expressly covered in another runs counter to  the teachings and principles of Albright and County of Sacramento.

These attendant circumstances also entitle defendant to qualified immunity on a malicious prosecution claim grounded in the First Amendment.  Assuming the right to be free from prosecution based on association alone clearly was established, plaintiff would be unable to demonstrate that a reasonable officer would recognize that pursuing charges against plaintiff for the activities captured on the intercepted communications and observed during the surveillance would violate that clearly established right.

 Although immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); see also 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 358–59 (1990) (citing cases).  Accordingly, absolute or qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quoting Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996) (citation omitted)); accord Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) (recognizing entitlement to official immunity on face of complaint); Santamorena v. Georgia Military College, 147 F.3d 1337, 1342 (11th Cir. 1998) (recognizing entitlement to qualified immunity on face of

complaint).  And that review includes consideration of matters of public record in the underlying prosecution which is integral to a plaintiff's claim of malicious prosecution, including judicial opinions and orders that were entered into that record.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "A defendant has the burden to establish that he is entitled to qualified immunity." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-part test to determine whether a defendant is entitled to qualified immunity.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201.  If no constitutional right was violated, "the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).  If, however, the facts read in the light most favorable to the plaintiff show a violation of a constitutional right, the analysis proceeds to the second step: "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201.  A right is clearly established in the particular context if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.  If, however, it would not have been clear "to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Kopec, 361 F.3d at 776.

A defendant is entitled to qualified immunity if the record fails to support affirmative findings at either of the two levels of inquiry. Saucier, 533 U.S. at 201. Courts retain discretion in determining the order in which the requirements are considered. Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Plaintiff's claim would fail under the second prong of the inquiry because it is clear from the face of the complaint and the public record reflecting plaintiff's detention in the underlying prosecution that it would not be clear to a reasonable officer that prosecuting plaintiff for conspiracy based on the information available would violate his First Amendment rights. In support of detaining plaintiff prior to trial the government cited to information likely reducible to admissible evidence indicating that plaintiff had (1) knowingly stored and then returned a handgun accepted by a key distributor in the conspiracy as part of a drug sale pursuant to conversations and under circumstances that gave rise to an inference that plaintiff was aware that the gun was being bartered as part of a drug transaction, (2) supplied a safe location for key members the group while they were conducting large-scale drug trafficking operations, (3) permitted individuals engaged in a drug conspiracy to set-up in-person communications with couriers and purchasers at the location, which communications and in-person contacts were indicative of drug-trafficking and (4) engaged in counter-surveillance in an effort to ascertain whether the operations of the illegal operation were being investigated by law enforcement. Because it would not be clear to a reasonable officer that proceeding with a charge of conspiracy would violate plaintiff's right to freedom of association under such circumstances, defendant

would be entitled to qualified immunity under the <u>Andrews</u> prong of the inquiry.

Plaintiff's malicious prosecution claim in violation of the First Amendment is predicated on underlying facts that permitted prosecution for association with a group of individuals because as a matter of law the members had adopted unlawful goals. It also is precluded by the inability to plead sufficient factual matter to displace the presumption of probable cause and runs counter to the established principle that civil rights claims raising matters governed by the Fourth Amendment are not to be analyzed under the jurisprudence addressing general principles of other amendments. And it would be barred by qualified immunity in any event. Consequently, defendant's motion will be granted on this claim as well.

In contrast, the Fourth Amendment right to be free from prosecution without probable cause where a deprivation of liberty occurs was well established at the time in question. The United States Court of Appeals for the Third Circuit made clear no later than 1998 that a citizen's Fourth Amendment rights are violated when a law enforcement officer initiates a prosecution without probable cause and the citizen suffers a deprivation of liberty in conjunction therewith. <u>Gallo</u>, 161 F.3d at 222 ("<u>Albright</u> implies that prosecution without probable cause is not, in and of itself, a constitutional tort. . . . Instead, the [Fourth Amendment] constitutional violation is the deprivation of liberty accompanying the prosecution."); <u>accord</u> <u>Brockington</u>, 354 F. Supp.2d at 568-69 (recognizing that as of September 6, 2001, "[i]t was clearly established that a violation of common law malicious prosecution along with some deprivation of liberty consistent with the concept of 'seizure' constitutes a violation of the constitution.") (citing <u>Gallo</u>, 161 F.3d at 222 and <u>Merkle</u>, 211 F.3d at 794)).

Similarly, "[i]f a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously

failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity." Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir. 1993) (citations omitted); accord Hervey v. Estes, 65 F.3d 784, 788 (9th Cir. 1995) (the submission of an affidavit that contains statements a law enforcement officer knows to be false strips "the shield of qualified immunity"); Kelly v. Curtis, 21 F.3d 1544, 1555 (11th Cir. 1994) (officer violated a clearly established constitutional right by seeking arrest warrant on conclusory affidavit); Olson v. Tyler, 771 F.2d 277, 282 (7th Cir. 1985) ("in cases in which suppression would be warranted because an officer was dishonest or reckless in preparing a warrant affidavit, that officer would not enjoy good faith immunity for civil damages."). The same is true with regard to information placed in key reports and forms. See Kulwicki v. Dawson, 969 F.2d 1454, 1468 (3d Cir. 1992) (allegations that officer proceeded on manufactured or coerced evidence and the charges were filed without a proper investigation of the law or interview with essential witness sufficient to survive qualified immunity at the pleading stage given the "objective reasonableness" standard governing qualified immunity and the need for further supplementation of the record) (citing Schrob v. Catterson, 948 F.2d 1402, 1421 (3d Cir. 1991) ("affirming district court's denial of qualified immunity where the case was 'better decided on summary judgment' because 'supplementation of the record was necessary'").

A non-moving plaintiff is entitled to the benefit of all reasonable inferences about whether an officer improperly has influenced a probable cause determination made by a judicial officer or body. A law enforcement officer "cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the [judicial officer or body] of inculpatory evidence." Wilson v. Russo, 212 F.3d 781, 787 (3d Cir. 2000). Nor can he or she create probable cause based on assertions that "when

'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he reported.'" Id. (quoting United States v. Clapp, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). Qualified immunity can be lost where an arrest and prosecution were predicated on a probable cause determination that would not have been made in the absence of such intentional or reckless influence. Wilson, 212 F.3d at 786; Reedy v. Evanson, 615 F.3d 197, 223-24 (3d Cir. 2010) (Law enforcement officer not entitled to qualified immunity where the record as read in the light most favorable to the non-moving party would support a finding that based on false and/or recklessly included inculpatory information, purposefully or recklessly omitted exculpatory information, and information otherwise known to officer "no reasonably competent officer would have concluded that a warrant should issue when it did for [the plaintiff's] arrest.").

Plaintiff has raised various allegations that Truong influenced the determination of probable cause by misrepresenting facts surrounding a search that resulted in evidence that was used in the prosecution, embellished or falsely created statements by co-defendants that implicated plaintiff and failed to review or preserve exculpatory evidence. As previously indicated, plaintiff's claim for malicious prosecution in violation of the Fourth Amendment is subject to dismissal under Twombly's plausibility standard for failure to plead sufficient factual matter to displace the presumption of probable cause that arises from the return of the indictment and the judicial rulings upholding plaintiff's pretrial detention. But under these circumstances a plaintiff generally is entitled to seek to cure the deficiencies by amendment unless attempting to do so would be futile. Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002)). At this juncture it cannot be said with legal certainty that permitting leave would be an exercise in futility. Consequently, any further evaluation of

38

whether plaintiff has stated a claim for malicious prosecution under the Fourth Amendment, and, if so, whether Truong is entitled to qualified immunity based on the specific facts that confronted and were known to him must await further development of the record.

For the reasons set forth above, defendant's motion to dismiss will be granted. All claims will be dismissed with prejudice except plaintiff's claim for malicious prosecution in violation of the Fourth Amendment, which will be dismissed without prejudice. As to that claim plaintiff will be permitted to file an amended complaint seeking to overcome the deficiencies highlighted in this opinion. An appropriate order will follow.[8]

Date: March 26, 2015

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     Joel S. Sansone, Esquire
        Massimo A. Terzigni, Esquire
        Paul D. Kovac, Esquire

        (*Via CM/ECF Electronic Mail*)

---

[8] Save plaintiff's claim for intentional infliction of emotional distress, all of the reasons for granting defendant's motion would be applicable to the Doe defendants regardless of whether they are state or federal officers. Consequently, the court will *sua sponte* dismiss the claims against the Doe defendants in the same manner with the exception of the intentional infliction of emotional distress claim.