IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK M. COBB,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:13cv1750 |
| | ) | **Electronic Filing** |
| **MINH-TRI V. TRUONG**, in his | ) | |
| individual and official capacities, | ) | |
| **JOHN and/or JANE DOE**, in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

On March 26, 2015, an opinion and order were issued in this case granting in large part

defendant Minh-Tri V. Truong's motion to dismiss the original complaint. All claims against

Truong were dismissed with prejudice except plaintiff's claim for malicious prosecution in

violation of the Fourth Amendment, which was dismissed without prejudice to file an amended

complaint seeking to overcome the deficiencies highlighted in the opinion. All claims against

the John and Jane Doe defendants likewise were dismissed with prejudice except plaintiff's claim

for malicious prosecution in violation of the Fourth Amendment and the intentional infliction of

emotional distress claim, which were dismissed without prejudice. Plaintiff filed an amended

complaint on April 29, 2015. Presently before the court is defendant Truong's motion to dismiss

plaintiff's amended complaint and plaintiff's motions to unseal the grand jury transcript in the

underlying criminal prosecution and further amend the complaint based on the information

revealed therein. For the reasons set forth below, defendant's motion will be granted and

plaintiff's motions will be denied.[1]

---

[1] This memorandum opinion assumes the reader's familiarity with the March 26, 2015, opinion

The obstacles plaintiff needed to overcome to meet his burden to set forth a plausible Fourth Amendment claim for malicious prosecution were addressed thoroughly in the opinion. Among other things, the opinion pointed out that plaintiff needed to raise a sufficient factual basis to displace the presumption of probable cause that attached to the grand jury's indictment of plaintiff and the evidence the government proffered to procure plaintiff's pretrial detention as ordered by Magistrate Judge Mitchell and affirmed by Judge Ambrose and the United States Court of Appeals for the Third Circuit. This court observed that the record at the detention hearing reflected that "the government had at its disposal numerous intercepted communications involving Joseph and other members of the drug-trafficking network [and it] also had numerous hours of actual surveillance of plaintiff's residence by law enforcement officers other than Truong." Opinion of March 26, 2015 (Doc. No. 27) at 21. And it was against this "backdrop" that plaintiff's efforts to plead a sufficient level of factual content to overcome the presumption of regularity that attached to the grand jury indictment and judicial proceedings of public record were analyzed in detail and found to be deficient.[2]

Plaintiff has sought to overcome the deficiencies in his Fourth Amendment malicious prosecution claim against Truong and the Doe defendants through two separate avenues. He has amended the complaint to assert additional allegations about the manner and means by which recordings from his home security system assertedly became unavailable to him and he has filed a motion to permit the unsealing of the grand jury transcript. Each of these measures are unavailing.

_____

(Doc. No. 27) and order (Doc. No. 28), which are incorporated herein and collectively referred to as "the opinion."

[2] The evidence of intercepted communications and first-hand surveillance proffered at plaintiff's detention hearing was summarized at pages 19-20 of the opinion.

Plaintiff has added the following allegations about the asserted loss of the footage on his home security system:

25. At some point, after the illegal search and seizure of the Plaintiff's home, after the Plaintiff insisted that the Defendants review the security footage and after the Defendants, without good cause or excuse, refused to review that footage, the memory on Plaintiff's security system was mysteriously wiped clean.

26. Upon information and belief, the Plaintiff avers that Defendant Truong acted directly, or through one of his subordinates acting at his direction, engineered the break in of Plaintiff's residence, for the specific purpose of destroying the exculpatory evidence contained on Plaintiff's security system. The facts which support this allegation are as follows:

A. After Plaintiff was arrested, he was initially assigned a federal public defender for his defense. Because of the lack of action and positive results on the part of that attorney, the Plaintiff retained private counsel;

B. As part of his incarceration, Plaintiff was provided by prison officials with a personal identification number ("PIN") to be used when making all telephone calls. Plaintiff believes and therefore avers that this PIN could be and was used by prison and other law enforcement officials to determine which inmate was currently on a telephone conversation. Plaintiff further believes and therefore avers that Defendant Truong, as a member of law enforcement, had access to information regarding the Plaintiff's telephone usage while incarcerated, including but not limited to the knowledge of Plaintiff's PIN, as well as additional knowledge regarding Plaintiff's telephone usage;

C. After Plaintiff retained private counsel, he informed private counsel of the existence of and importance of the security tapes contained in his home security system. Shortly after communicating this information to his counsel, in a second telephone conversation between Plaintiff and his counsel, Plaintiff provided the password necessary for use by the expert hired by Plaintiff's private counsel to review and analyze the security footage. This information was provided by Plaintiff to his attorney during this telephone conversation. Plaintiff believes and therefore avers that Defendant Truong, or another law enforcement official acting on Defendant's behalf and at his direction, listened to that conversation, either live or in a recorded version later, and learned that the Plaintiff had provided his expert with all of the necessary information for the expert to access Plaintiff's security system and review the exculpatory footage contained therein; []

D. Shortly thereafter, there was a break in at Plaintiff's home. The individual and/or individuals that committed the break in broke a window on the north side of the Plaintiff's home and entered Plaintiff's residence. Curiously, nothing of value was taken as the result of this break in, although many items of substantial value, which were relatively portable, were present at Plaintiff's home at that time[; and]

E. Shortly after the break in, Plaintiff's expert was able to examine the security footage from the security cameras. At that time, Plaintiff learned that the security camera footage, which contained exculpatory materials relative to the accusations against the Plaintiff, had been "wiped clean," presumably through the use of a magnet or other device commonly used for that purpose.

27. Based upon the foregoing, Plaintiff believes and therefore avers that, upon learning of the Plaintiff's plan to have his attorney obtain and show this exculpatory evidence to the jury, Defendant Truong executed a plan to destroy such evidence by breaking into the Plaintiff's home and tampering with the security systems, which contained, Plaintiff asserts, evidence which would tend to exculpate the Plaintiff.

28. By taking the actions as aforementioned, Defendant Truong, directly or at the direction of other law enforcement personnel, committed fraud, and in so doing, deprived the prosecutor and the grand jury of evidence which tended to exculpate the Plaintiff.

29. The aforementioned conduct of Defendant Truong, assisted by and in conspiracy with Defendant(s) Doe, including his illegal actions in destroying exculpatory evidence, his failure to examine exculpatory evidence, and his failure to obtain any evidence whatsoever linking Plaintiff to this major drug distribution scheme, demonstrates that Defendant Truong and Defendant(s) Doe acted fraudulently, with ill will toward the Plaintiff, and for a purpose other than what they believed was a legal and proper prosecution, and they performed a constitutionally deficient investigation before charging Plaintiff.

Amended Complaint (Doc. No. 32) at ¶¶ 25-29.[3]  Plaintiff does not advance any other facts to

support this purported series of events.

---

[3]  By way of comparison, the original complaint contained the following averment(s):

25. At some point, after the illegal search and seizure of the Plaintiff's home, after the Plaintiff insisted Defendants review the security footage and after the Defendants, without good cause or excuse, refused to review that footage, the memory on Plaintiff's security system was mysteriously wiped clean. Plaintiff believes and therefore avers that the Defendants, acting either alone or in conspiracy with each other, took certain actions which had the effect of destroying evidence that was exculpatory to the Plaintiff contained in the memory of that security system.

26. The aforementioned conduct of Defendant Truong, assisted by and in conspiracy with Defendant(s) Doe, including his failure to examine exculpatory evidence and failure to obtain any evidence whatsoever linking Plaintiff to this major drug distribution scheme, demonstrates that Defendant Truong, and Defendant(s) Doe, performed a constitutionally deficient investigation before charging Plaintiff.

Complaint (Doc. No. 1) at ¶¶ 25-26.

Plaintiff's amended allegations fall short of the mark for two basic reasons. First, they are not grounded in any personal knowledge of plaintiff and are allegations that are not entitled to a presumption of truth in any event.

As the Third Circuit recently reiterated, in reviewing the sufficiency of a complaint pursuant to a motion to dismiss, the reviewing court is to "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth." <u>Connelly v. Lane Construction Corp.</u>, 809 F.3d 780, 789 (3d Cir. 2016). A distinction is to be drawn "between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if 'unrealistic or nonsensical,' 'chimerical,' or 'extravagantly fanciful.'" <u>Id.</u> (citing <u>Iqbal</u>, 556 U.S. at 681). In other words, outlandish allegations of historical fact are entitled to "a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a . . . claim' or other legal conclusion." <u>Id.</u> at 790.

Paragraphs 26 through 29 are not entitled to a presumption of truth because they are not grounded in fact and are rife with conclusions of law. There are no factual allegations to support the propositions that: 1) the security footage actually contained exculpatory allegations; 2) Truong or anyone acting on his behalf had access to plaintiff's personal identification number or his anticipated or actual use of the telephone services while in pretrial detention at Northeast Ohio Correctional Center; 3) Truong or anyone acting on his behalf listened to the conversation wherein plaintiff conveyed to his lawyer the information needed to access his home security system; 4) Truong or anyone acting on his behalf executed a plan to break into plaintiff's home and tamper with the footage on the home security system; 5) Truong or anyone acting on his behalf deprived the grand jury or the prosecutor of exculpatory evidence; 6) Truong or anyone acting on his behalf committed fraud; and 7) Truong or anyone acting on his behalf committed a constitutionally deficient investigation.

Each of these allegations constitute the type of threadbare and speculative assertions of fact that presumptively is devoid of further factual development. Any actual facts to support this imaginative theory presumably would already be available to or in plaintiff's possession. Thus, the context and setting do not give rise to a reasonable expectation that discovery will give rise to evidence to support these averments.

Moreover, to draw the conclusions that the home security footage contained exculpatory evidence and Truong must have acted in the manner alleged because a break-in occurred while plaintiff was incarcerated and the security footage was unavailable when plaintiff's expert attempted to review it is beyond wild speculation. The averments smack of broad-brushed strokes of wrongdoing based on legal conclusions. Such broad-based re-working of legal jargon is not entitled to a presumption of factual accuracy. See Connelly, 809 F.3d at 790 ("Perhaps 'some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual,' but the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point.") (quoting Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir.2011) (citation and internal quotation marks omitted)). Such clever paraphrasing of "language or elements" of a claim of wrongdoing are "disentitled to any presumption of truth." Id. at 790.

Stripped of these speculative and conclusory averments, the amended complaint fails to advance anything beyond the allegations in the original complaint about the loss of the home security footage.[4] Without any additional averments of fact entitled to a presumption of

---

[4] It was plaintiff's initial assertion that "[a]t an unknown date and time after the December 14, 2010 search, defendants allegedly erased the memory of plaintiff's security system, thereby destroying the exculpatory evidence." March 26, 2015, opinion (Doc. No. 27) at 7. The court

truthfulness, plaintiff's amended complaint continues to be deficient for all the reasons set forth in the March 26, 2015, opinion (Doc. No. 27) and order (Doc. No. 28).

Second, the opinion made clear that something beyond the mere assertion that the home security footage would reveal the lack of drug activity outside plaintiff's home was necessary to displace the presumption of probable cause that attached to the grand jury's indictment of plaintiff and the evidence the government had proffered to procure plaintiff's pretrial detention. As noted therein, the record at the detention hearing indicated the government had at its disposal numerous intercepted communications involving Joseph and other members of the drug-trafficking network as well as numerous hours of actual surveillance of plaintiff's residence by law enforcement officers other than Truong. To suggest that home security footage of some undetermined period of time that did not show drug transactions occurring outside plaintiff's home was exculpatory and would operate to displace the government's evidence found to be sufficient for pretrial detention at three levels of judicial review is the quintessential of an allegation that is conclusory and unworthy of any weight because it embodies a legal conclusion.

The court assumed in its analysis of plaintiff's original complaint that the home security system would have revealed hours and even weeks of surveillance outside plaintiff's home without depicting drug transactions. It continues to do so. But as explained in the March 26, 2015 opinion, such evidence simply cannot supply the factual allegations and context needed to displace the presumption of probable cause that that attached as a result of the events documented by and in the public record of the criminal prosecution. See March 26, 2015 Opinion (Doc. No. 27) at 17.[5]

_____

considered this assertion when it granted defendant's motion to dismiss the original complaint.
[5] As the court observed:

In short, a summary of the evidence used to detain plaintiff was set forth a pages 18 through 20 of the March 26, 2015, opinion.  Plaintiff's allegations in the amended complaint continue to fall short of displacing the presumption of probable cause that attached to the grand jury's indictment of plaintiff and the evidence the government proffered to procure plaintiff's pretrial detention.[6]

Finally, plaintiff's efforts to obtain a transcript of the grand jury proceeding in an effort to plead a plausible showing of entitlement to relief for malicious prosecution in violation of the Fourth Amendment reflect the type of legal maneuvering that is now precluded by Twomby and Iqbal.  A plaintiff must set forth a sufficient factual basis to support a plausible showing of entitlement to relief.  Advancing broad generalizations and legal conclusions does not give rise to a right to search for evidence to support a theory that wrongdoing of some sort must have been afoot.

In applying the plausibility standard a reviewing court is required to undertake a context-specific assessment that draws on its judicial experience and common sense.  Connelly, 809 F.3d

---

And Truong supposedly refused to retrieve, remove or view footage on plaintiff's home security system after plaintiff's arrest, which would have revealed certain activities outside plaintiff's residence.  That footage from the security system eventually was lost or destroyed after plaintiff was detained.

Assuming these factual assertions to be true, which we must, they do not sufficiently create a factual scenario to rebut the presumption created by the grand jury's return of the original and superseding indictments against plaintiff and the multi-level judicial review of the government's evidence advanced to achieve plaintiff's pretrial detention under the Bail Reform Act of 1984.

Id.

[6] Of course, the original indictment was returned against plaintiff before he was arrested.  See United States v. Gaines, 2:10cr233 (W.D. Pa., J. Ambrose) (ECF 1) and (ECF 19).  Thus, any conversation plaintiff had with Truong after his arrest about the content of the home security footage could not have influenced the information presented to the grand jury and the bases it had to find probable cause to charge plaintiff in the drug conspiracy at count one of the original indictment.

at 2016 (quoting <u>Iqbal</u>, 556 U.S. at 679). Viewed through that lens, plaintiff's theories about how Truong must have improperly influenced the prosecutor and grand jury's decision to return an indictment against him and thereafter concocted an elaborate conspiracy with individuals working for a private entity providing pretrial detention services to destroy personal property under plaintiff's control are grounded in a level of historical fact that at best identifies a possibility that the defendants acted in the manner alleged. Because pleading factual content that raises mere possibility is deficient, an order will be entered dismissing plaintiff's amended complaint in its entirety.[7]

<u>Date: March 24, 2016</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc:    Joel S. Sansone, Esquire
       Massimo A. Terzigni, Esquire
       Paul D. Kovac, Esquire

       (*Via CM/ECF Electronic Mail*)

---

[7] Plaintiff's state law claim for intentional infliction of emotional distress is dependent on a plausible showing that state actors combined with Truong to violate one or more of plaintiff's constitutional rights. <u>See</u> Amended Complaint (Doc. No. 32) at ¶¶ 57-58, 60. Because no such showing has been made and it is apparent that plaintiff cannot set forth sufficient factual content to make such a showing, it too will dismissed. In the alternative, the court declines to exercise jurisdiction over the claim in accordance with its discretion under 28 U.S.C. § 1367(c).